UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

SHERRY O.                                           :
                                                    :
v.                                                  :   C.A. No. 21-00249-JJM
                                                    :
KILOLO KIJAKAZI, Commissioner                       :
Social Security Administration                      :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income benefits ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed her Complaint on June 9, 2021 seeking to reverse the Decision of the Commissioner.  On December 16, 2021, Plaintiff filed a Motion to Reverse the Decision of the Commissioner.  (ECF No. 11).  On January 21, 2022, Defendant filed a Motion to Affirm the Commissioner's Decision.  (ECF No. 13).  On February 1, 2022, Plaintiff filed a Reply.  (ECF No. 14).

This matter has been referred to me for preliminary review, findings, and recommended disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties' submissions and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I recommend that Plaintiff's Motion to Reverse (ECF No. 11) be DENIED and that the Commissioner's Motion to Affirm (ECF No. 13) be GRANTED.

## I.     PROCEDURAL HISTORY

Plaintiff filed applications for SSI (Tr. 201-211) and DIB (Tr. 212-218) on April 2, 2019 alleging disability since October 1, 2017.  The SSI application was denied initially on May 22, 2019 (88-93); the DIB application on May 20, 2019.  (Tr. 94-99).  Both applications were denied on reconsideration on October 10, 2019.  (Tr. 104-110, 111-117).  Plaintiff requested an Administrative Hearing.  On July 22, 2020, a hearing was held before Administrative Law Judge Paul Goodale (the "ALJ") at which time Plaintiff, represented by counsel, and a Vocational Expert ("VE") appeared and testified.  (Tr. 39-87).  The ALJ issued an unfavorable decision to Plaintiff on September 29, 2020.  (Tr. 13-30).  On April 5, 2021, the Appeals Council denied Plaintiff's request for review.  (Tr. 1-4).  A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff contends that the Appeals Council was egregiously mistaken when it determined that newly submitted evidence did not show a reasonable probability of changing the outcome of her application.  (ECF No. 11 at p. 3).

The Commissioner disputes Plaintiff's claims and contends that Plaintiff has not demonstrated that the Appeals Council's decision was a serious mistake or egregious error. (ECF No. 13 at pp. 1-2).

## III.   THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.

Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621

F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings

of fact.  Id.  The court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  Id.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.     Opinion Evidence

For applications like this one, filed on or after March 27, 2017, the Administration has fundamentally changed how adjudicators assess opinion evidence.  The requirements that adjudicators assign "controlling weight" to a well-supported treating source's medical opinion that is consistent with other evidence, and, if controlling weight is not given, must state the specific weight that is assigned – are gone.  See Shaw v. Saul, No. 19-cv-730-LM, 2020 WL 3072072, *4-5 (D.N.H. June 10, 2020) citing Nicole C. v. Saul, Case No. cv 19-127JJM, 2020 WL 57727, at *4 (D.R.I. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(a)). Under the newly applicable regulations, an ALJ does not assign specific evidentiary weight to any medical opinion and does not defer to the opinion of any medical source (including the claimant's treating providers).  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the ALJ evaluates the relative persuasiveness of the medical evidence in terms of five specified factors.  Id.

The five factors the ALJ considers in evaluating the persuasiveness of a medical opinion are supportability (the relevance of the opinion's cited objective medical evidence), consistency

(how consistent the opinion is with all of the evidence from medical and non-medical sources), treatment/examining relationship (including length of treatment relationship, frequency of examinations, purpose of treatment relationship, and existence and extent of treatment/examining relationship), specialization (the relevance of the source's specialized education or training to the claimant's condition), and what the Administration refers to as "other factors" (the medical source's familiarity with the claimant's medical record as a whole and/or with the Administration's policies or evidentiary requirements). Shaw, 2020 WL 3072072 at *4 citing 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5) (emphasis supplied). Of the five factors, the "most important" are supportability and consistency. Id. §§ 404.1520c(a), 404.1520c(b)(2), 416.920c(a), 416.920c(b)(2).

While the ALJ must consider all five of the factors in evaluating the persuasiveness of medical evidence, when preparing the written decision, the ALJ is, in most cases, only required to discuss application of the supportability and consistency factors. Id. §§ 404.1520c(b)(2), 416.920c(b)(2). Only where contrary medical opinions are equally persuasive in terms of both supportability and consistency is the ALJ required to discuss their relative persuasiveness in terms of the treatment/examining relationship, specialization, and other factors. Id. §§ 404.1520c(b)(3), 416.920c(b)(3). In addition, where a single medical source offers multiple opinions, the ALJ is not required to discuss each opinion individually, but instead may address all of the source's opinions "together in a single analysis." Id. §§ 404.1520c(b)(1), 416.920c(b)(1).

Moreover, while the ALJ must consider all of the relevant evidence in the record, Id. §§ 404.1520b(a)-(b), 416.920b(a)-(b), the ALJ need not discuss evidence from nonmedical sources, including, e.g., the claimant, the claimant's friends and family, educational personnel,

and social welfare agency personnel. Id. §§ 404.1502(e), 404.1520c(d), 416.902(j), 416.920c(d). And while the regulations require the ALJ to discuss the relative persuasiveness of all medical source evidence, Id. §§ 404.1520c(b), 416.920c(b), the claimant's impairments must be established specifically by evidence from an acceptable medical source, Id. §§ 404.1521, 416.921.

"Acceptable medical sources" are limited to physicians and psychologists, and (within their areas of specialization or practice) to optometrists, podiatrists, audiologists, advanced practice registered nurses, physician assistants, and speech pathologists. Id. §§ 404.1502(a), 416.902(a). Evidence from other medical sources, such as licensed social workers or chiropractors, is insufficient to establish the existence or severity of a claimant's impairments. Id. Finally, the ALJ need not discuss evidence that is "inherently neither valuable nor persuasive," including decisions by other governmental agencies or nongovernmental entities, findings made by state disability examiners at any previous level of adjudication, and statements by medical sources as to any issue reserved to the Commissioner. Id. §§ 404.1520b(c), 416.920b(c).

### B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of HHS, 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the

right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of HHS, 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant

bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of HHS, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

E.   **Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the

claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. SSR 16-3p, 2017 WL 4790249, at *49462; 20 C.F.R. § 404.1529(c)(3). In determining whether the medical signs and

laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

>   (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
>   (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
>   (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
>   (4) Treatment, other than medication, for relief of pain;
>
>   (5) Functional restrictions; and
>
>   (6) The claimant's daily activities.

Avery v. Sec'y of HHS, 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A). However, the individual's statements about the intensity, persistence, and limited effects of symptoms may not be disregarded "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms." SSR 16-3p, 2017 WL 4790249, at *49465.

    **2.**    **Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain

testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)). Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by SSR 16-3p, 2017 WL 4790249, at *49462 (Oct. 25, 2017). It directs the ALJ to consider the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; any other relevant evidence; and whether statements about the intensity, persistence, and limiting effects of symptoms are consistent with the medical signs and laboratory findings. SSR 16-3p, 2017 WL 4790249, at *49465.

## V.   APPLICATION AND ANALYSIS

### A.   The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 5. At Step 2, the ALJ found that Plaintiff suffered from the following "severe" impairments: osteoarthritis in bilateral knees and bilateral edema in lower extremities and heels; depressive, bipolar disorders; and substance abuse disorder (in remission). (Tr. 19). The ALJ concluded at Step 3 that these impairments did not meet or medically equal any of the Listings. (Tr. 20). As to RFC, the ALJ concluded

that Plaintiff could perform a limited range of light work. (Tr. 21-22). Based on this RFC, the ALJ concluded at Step 4 that Plaintiff was unable to perform any past relevant work. (Tr. 27). However, he found at Step 5 that Plaintiff could perform certain light, unskilled jobs and thus was not disabled. (Tr. 28-29).

After the ALJ's decision, Plaintiff sought Appeals Council review and submitted an additional medical record. This effectively one-page treatment record was from Coventry Foot Specialists and dated September 9, 2020. (Tr. 2, 37-38). The Appeals Council found that such evidence did "not show a reasonable probability that it would change the outcome of the decision." (Tr. 2)

### B. The Appeals Council Decision

Plaintiff argues that the Appeals Council was "egregiously mistaken" when it determined that the newly-submitted medical record did not show a "reasonable probability" that it would change the outcome. (ECF No. 11 at pp. 3-4). Plaintiff argues this record "would have been likely to further her standing and walking limitations.…" and that the ALJ would have been more likely to "take more seriously the need to elevate her legs." Id. at p. 5. Plaintiff notes that the "omitted records indicate new diagnoses of plantar fasciitis and contracture of ankle joints which would affect Plaintiff's ability to stand and walk for six out of eight hours (light RFC)." Id. Plaintiff concludes that the additional medical record "supported and substantiated Plaintiff's pain complaints." Id. at p. 6. Finally, Plaintiff contends that "[t]he existing consultative examination became outdated because a new examination was warranted with the discovery of new diagnoses." (ECF No. 14 at p. 3).

Generally, the discretionary decision of the Appeals Council to deny a request for review of an ALJ's decision is not reviewable. A judicial review under 42 U.S.C. § 405(g) is

typically focused on the findings and reasoning of the ALJ, i.e., whether the ALJ's findings are supported by substantial evidence and whether the ALJ properly applied the law. Of course, it makes no sense from an efficiency standpoint for a reviewing court to spend time and resources critiquing the work of the Appeals Council when it has jurisdiction to review the underlying and operative ALJ decision. In other words, reversible error by an ALJ can be remedied by the Court regardless of what the Appeals Council did or did not do.

The First Circuit has, however, held that review of Appeals Council action may be appropriate in those cases "where new evidence is tendered after the ALJ decision." Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001). In such cases, "an Appeals Council refusal to review the ALJ may be reviewable where it gives an egregiously mistaken ground for this action." Id. This avenue of review has been described as "exceedingly narrow." Harrison v. Barnhart, C.A. No. 06-30005-KPN, 2006 WL 3898287 (D. Mass. Dec. 22, 2006). Further, the term "egregious" has been interpreted to mean "[e]xtremely or remarkably bad; flagrant." Ortiz Rosado v. Barnhart, 340 F. Supp. 2d 63, 67 (D. Mass. 2004) (quoting Black's Law Dictionary (7th ed. 1999)).

In Mills, the First Circuit recognized that an Appeals Council denial of a request for review has all the "hallmarks" of an unreviewable, discretionary decision. Mills, 244 F.3d at 5. The Appeals Council is given a great deal of latitude under the regulations and "need not and often does not give reasons" for its decisions. Id. Thus, the First Circuit "assume[d] that the Appeals Council's refusal to review would be effectively unreviewable if no reason were given for the refusal." Id. at p. 6. It did, however, create a narrow exception for review when the Appeals Council "gives an egregiously mistaken ground for [its] action." Id. at p. 5. The First Circuit concluded that this principle was not a "serious anomaly" because "there is reason

enough to correct an articulated mistake even though one cannot plumb the thousands of simple 'review denied' decisions that the Appeals Council must issue every year." Id. at p. 6.

The instant issue focuses on the medical record submitted and whether there is a reasonable probability that it would have changed the outcome if considered by the ALJ. Of course, as discussed above, the Appeals Council's determination must be viewed by this Court through the egregious error lens. Plaintiff's conclusory statements that the supplementary medical evidence is "starkly inconsistent with the ALJ's determination" fall far short of convincing the Court that the Appeals Council's "reasonable probability" conclusion was "egregiously mistaken." (ECF No. 11 at p. 3). There is simply not convincing support in the record for this statement. However, out of fairness, the Court has fully reviewed the medical record in question (Tr. 37-38) in applying the Mills standard.

The evidence considered by the ALJ included x-rays showed a hallux valgus deformity and bunion formation on Plaintiff's right foot. (Tr. 24; Tr. 301). For disability evaluation purposes, no musculoskeletal deficits were noted during a December 2017 physical examination. (Tr. 24). Then, in 2019, Plaintiff complained of heel pain, but reported being able to walk distances without difficulty and complete household chores like laundry, cleaning, preparing meals, driving, and shopping. (Tr. 24; Tr. 378-379). A physical examination revealed no heel-to-toe gait deformity or motion deficits. (Tr. 378-379). Neither her heels nor the soles of her feet were tender, and she did not require an assistive device to walk. In January 2020, Plaintiff reported feeling well, despite continuing to complain of pain in the bottom of her heels; her heels were tender to palpation. (Tr. 24; Tr. 392). She was assessed with plantar fasciitis and prescribed an extra-strength pain reliever. (Tr. 392). The ALJ also expressly considered Plaintiff's subjective statements of her limitations. (Tr. 23-24). In particular, the ALJ

considered Plaintiff's allegation that she needed to elevate her legs to relieve her symptoms. (Tr. 24). The ALJ discounted Plaintiff's subjective description of the intensity, persistence, and limiting effects of her impairments. (Tr. 23-24). Additionally, as it related to her purported need to elevate her legs, the ALJ accurately observed there was no mention of that in any of the treatment records. (Tr. 24).

The September 2020 podiatry appointment and treatment note in issue showed Plaintiff had full bilateral strength in her legs, full range of motion without pain or crepitus, and her x-rays demonstrated well-preserved joint space in her feet. (Tr. 37). The podiatrist diagnosed Plaintiff with acquired bilateral hallux valgus, bilateral plantar fasciitis, and bilateral contracture of joints of ankles. Id. He recommended only conservative suggestions that Plaintiff change her shoes (which were noted to be "well worn"), purchase "over-the-counter arch support," "home physical therapy to address equinus", and that she stop smoking. Id.

Plaintiff has neither argued nor shown that this treatment record differs materially from the medical evidence considered by the ALJ. While Plaintiff argues this record "supported and substantiated Plaintiff's pain complaints," (ECF No. 11 at p. 6), and "cast[s] doubt on the conclusion…", id., that Plaintiff could perform light work, the Court disagrees.

As noted, the medical record indicates full strength, full range of motion and well-preserved joint space. Although there are indeed "verified diagnoses" contained in the treatment record, that is all the new information contained in the record. The Commissioner notes that the diagnoses of impairments that were made at the September 2020 appointment do not "compel, or even suggest, related functional restriction." (ECF No. 13 at p. 9). The Court agrees. The RFC crafted by the ALJ is unique to Plaintiff and "considers only functional limitations and restrictions *that result* from an individual's medically determinable impairment

or combination of impairments." Id. citing SSR 96-8p. The Commissioner further notes that "[i]t is the functional limitations or restrictions caused by medical impairments and their related symptoms that are categorized as exertional or nonexertional" for the purposes of the RFC. Id. The Court finds that Plaintiff's conclusory arguments fail to support the heavy burden of showing that the Appeals Council committed an egregious error. The bottom line is that neither Plaintiff's conclusory argument nor the treatment record itself support an "egregious" error finding.

Plaintiff makes a variety of additional points which can be quickly dispensed. First, her assertion that she had the "possibility of gridding at a sedentary RFC" is entirely speculative. Further, the podiatry record from 2020 did not discuss Plaintiff's ability to perform daily activities, and thus, Plaintiff submitted nothing to the Appeals Council that would have had a reasonable probability of changing the ALJ's decision in that regard. (ECF No. 13 at p. 11). The ALJ thoroughly considered and discussed Plaintiff's leg pain and swelling and her need to elevate her legs throughout the day, he also noted her "constant…heel pain for four to five years." (Tr. 22, 24). The new diagnoses contained in the treatment record alone do not demonstrate a material worsening of her conditions, thus the Appeals Council's decision is not egregious error.

### CONCLUSION

For the reasons discussed herein, I recommend that Plaintiff's Motion to Reverse (ECF No. 11) be DENIED and that the Commissioner's Motion to Affirm (ECF No. 13) be GRANTED. I further recommend that Final Judgment enter in favor of the Commissioner.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR

Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


 /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
March 2, 2022